D. Maimon Kirschenbaum
Lucas C. Buzzard
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
------------------------------------------------------------x
**FRED WALFISH, on behalf of himself and others similarly situated**

        **Plaintiff,**

   v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, NORTHWESTERN MUTUAL INVESTMENT SERVICES, LLC,**

        **Defendants.**
------------------------------------------------------------x

Docket No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

*Document Filed Electronically*

Plaintiff Fred Walfish, on behalf of himself and all others similarly situated, alleges as follows:

## SUMMARY OF CLAIMS

1.    This is a class action brought on behalf of Plaintiff, a former life insurance agent with Defendant Northwestern Mutual Life Insurance Company ("Northwestern") and a former registered representative of Defendant Northwestern Mutual Investment Services, LLC ("NMIS"), and on behalf a class of similarly situated persons composed of all current and former insurance agents, special agents, soliciting agents, registered representatives, financial representatives, financial advisors, wealth management advisors, and senior financial representatives (collectively "Representatives") who held contracts with Defendants and worked

1

in the State of New Jersey at any time since July 11, 2010 through the date of judgment in this action.

2. Defendants misclassified Plaintiff and Class Members as independent contractors rather than employees and illegally withheld or diverted portions of their wages.

3. In so doing, Defendants violated the rights of Plaintiff and the Class under the New Jersey State Wage Payment Law ("WPL"), N.J. Stat. § 34:11-4.1 *et seq*.

## JURISDICTION AND VENUE

4. This Court has original federal diversity jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5 million exclusive of interest and costs and this is a Class action in which members of the Class are citizens of a State different from Defendants. Plaintiff is a citizen and resident of New York. Upon information and belief, the vast majority of Class Members are citizens and residents of New Jersey who worked for Defendants in New Jersey. Defendants Northwestern and NMIS are citizens of Wisconsin.

5. Venue is proper in this District because Defendants have active operations in this District, Plaintiffs and Class Members work or worked at Defendants' offices in this District, most of the events that give rise to this lawsuit occurred here, and this is the most convenient forum.

## PARTIES

6. This action is brought by Plaintiff, a New York citizen who worked in New Jersey as a life insurance agent and financial representative of Defendants. Plaintiff worked for Defendants from 1996 to June 2016. He primarily sold life insurance policies and various securities products offered by Defendants to clients.

7. In April 2009, Plaintiff entered into a Full Time Agent's Contract with Northwestern and a Registered Representative Agreement with NMIS. He continued working under those agreements until June 9, 2016, when Defendants unilaterally terminated him.

8. Defendant Northwestern is a life insurance business that is incorporated in the State of Wisconsin and has its headquarters in Milwaukee, Wisconsin. Defendant Northwestern has numerous office locations throughout New Jersey.

9. Defendant NMIS is a subsidiary of Defendant Northwestern. NMIS is a Wisconsin limited liability company that has its headquarters in Milwaukee, Wisconsin. NMIS is a registered broker-dealer and investment adviser under the federal securities laws. Defendant NMIS has numerous office locations throughout New Jersey.

## CLASS ALLEGATIONS

10. Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself all persons who worked in New Jersey as insurance agents, special agents, soliciting agents, registered representatives, financial representatives, financial advisors, wealth management advisors, or senior financial representatives (collectively "Registered Representatives") for Defendants at any time on or after the date that is six years before the filing of this Complaint.

11. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The wages withheld from each Class member is also determinable from Defendants' records. For purposes of notice and other purposes related to this action, Class members' names and addresses are readily available from Defendants.

Notice can be provided by means permissible under Rule 23 of the Federal Rules of Civil Procedure.

12. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims on a class-wide basis will benefit the parties and the court. Although the precise number of Class members is not known to Plaintiff, Defendants' website indicates that the number of Registered Representatives currently operating in New Jersey exceeds 100. The facts necessary for calculation of the precise number of Class Members can be readily determined from Defendants' records, which are presently within the sole control of Defendants.

13. Plaintiff is a member of the Class and shares with the Class common questions of law and fact, including (a) whether Defendants misclassified Registered Representatives as independent contractors under the standard articulated pursuant to the New Jersey Wage Payment Law and New Jersey Supreme Court precedent, and (b) whether the deductions taken from Registered Representatives' wages by Defendants were impermissible withholdings or diversions from wages under N.J. Stat. § 34:11-4.4.

14. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which could be sought by each member of the Class in separate actions. All Class members, including Plaintiff, were subject to the same corporate practices of Defendants, namely, their policy of classifying Registered Representatives as independent contractors and their policy of withholding portions of Registered Representatives' wages. Plaintiff and Class Members are commonly protected by the same statutory rights as employees under the WPL to be paid free and clear of unlawful

withholdings or diversions of wages. Plaintiff has suffered similar types of damages as the other Class Members as a result of Defendants' failure to comply with the WPL.

15. Plaintiff is able to fairly and adequately represent and protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour class actions.

16. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate,

the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

## FACTS

17. Defendants Northwestern and NMIS (the "Companies") offer life insurance policies and other financial products nationwide. The Companies have home offices in Milwaukee, Wisconsin.

18. The Companies have smaller Network Offices located throughout the remainder of the country. Each Network Office has responsibility for, and control over, a specific geographic area. Each Network Office is headed by a Managing Partner, also referred to as a "General Agent."

19. Below the Managing Partners/General Agents are life insurance agents, special agents, soliciting agents, financial representatives, financial advisors, wealth management advisors, and senior financial representatives (collectively referred to herein as "Representatives") of Northwestern and NMIS who solicit applications for the sale of the Companies' insurance policies, securities, and other financial products, and who are responsible for servicing the needs of their clients.

20. In order to sell life insurance policies and other financial products offered by Defendant Northwestern, Representatives must enter into an agreement with Defendant Northwestern (an "Agent Agreement").

21. In order to sell securities and other investment products offered by Defendant NMIS, Representatives must enter into an agreement with Defendant NMIS (a "Registered Representative Agreement").

22. In April 2009, Plaintiff entered into a "full time" Agent Agreement with Northwestern and a Registered Representative Agreement with NMIS. He continued working under those Agreements until approximately May 2016, when Defendants unilaterally terminated his "full time" Agreements and placed him under a "senior" Agreement. In approximately June 2016, Defendants unilaterally terminated all agreements with Plaintiff.

23. Agent Agreements and Representative Agreements, including Plaintiff's, are signed by representatives of Northwestern and/or NMIS, as well as the Managing Partner/General Agent for the geographic area in which the Registered Representative operates.

24. Agent Agreements and Representative Agreements, including Plaintiff's, identify Registered Representatives as independent contractors.

25. Notwithstanding the Agreements' characterization, Defendants have the ability to exercise, and do exercise, substantial control over the performance of Registered Representatives' work and the manner in which they must complete their work.

26. Defendant Northwestern requires Representatives to meet "minimum earnings requirements" by soliciting and selling Northwestern life insurance policies and other financial products in an amount set by the company.

27. Representatives earn commissions, at rates set by Defendants, from the sale of Defendants' life insurance policies and other financial products. Representatives are compensated by Defendants pursuant to compensation schedules promulgated by Defendants. Defendants retain absolute discretion to unilaterally alter, reduce, or rescind these compensation schedules.

28. Defendants restrict Representatives' ability to sell life insurance policies issued by companies other than Northwestern. Representatives are required to sell Northwestern's

insurance products exclusively unless a Northwestern policy is not in the applicant's best interest.

29. Representatives are deemed by Defendants to be full-time insurance salespersons and are expected to concentrate their efforts on behalf of Defendants.

30. Representatives are generally required to obtain Defendants' approval before conducting any non-Northwestern business activity, regardless of the nature of that activity and regardless of whether that activity was related to the insurance industry.

31. Defendants prohibit Representatives from soliciting or selling securities or investment products on behalf of any broker-dealer other than NMIS.

32. Defendant NMIS reserves the right to supervise Representatives. At its sole discretion, NMIS can, and does, establish policies and procedures governing the means by which Representatives undertake the sale of securities products.

33. Defendants restrict the geographic area in which Representatives may solicit applications for the sale of Defendants' products.

34. Defendants prohibit Representatives from providing any remuneration, including a finder's fee, to any individual who does not have an Agreement with Defendants.

35. Defendants prohibited Representatives from conducting joint work with any individual who had not been approved by Defendants.

36. Defendants restricted Representatives' ability to move between Managing Partnerships/General Agencies within the Companies.

37. Defendants require Representatives to have an office provided by Defendants at a location specified by Defendants.

38. Defendants generate and maintain a website for each Representative.

39. Defendants provide each Representative with an approved email address and require each Representative to use Defendants' email system for all business-related emails.

40. Defendants control the layout and language of Representatives' letterhead.

41. Defendants control the layout and language of Representatives' business cards.

42. Defendants controlled the layout and language of Representatives' fax cover pages.

43. Defendants control the content of Representatives' business voicemail messages and require Representatives to identify themselves to all callers as Northwestern representatives.

44. Defendants control the format of Representatives' client files, including what must be contained in the files and what may not be included in the files.

45. Defendants own Representatives' client files and demand the surrender of client files upon termination.

46. Defendants promulgate compliance protocols and conduct annual examinations and reviews of Representatives' client files, letterheads, business cards, and voicemail greeting message to ensure compliance with those protocols.

47. Defendants require Representatives to own a computer and purchase it from Defendants.

48. Defendants require each Representative to install certain software installed on his or her computer. Defendants deduct monthly software charges for this required software from Representatives' pay.

49. Defendants deduct monthly computer hardware service and support charges from Representatives' pay.

50. Defendants demand that a Representative's computer be "wiped" upon termination and all data and software, both business and personal, be deleted.

51. Defendants pay Registered Representatives by use of Internal Revenue Service W-2 forms and withhold FICA taxes from Representatives' paychecks.

52. Defendants provide pension plans to Representatives.

53. Representatives may participate in a group health insurance plan that is provided and subsidized by Defendants.

54. Representatives receive bond/liability insurance provided by Defendants.

55. Representatives receive Errors and Omissions ("E&O") insurance provided and paid for by Defendants.

56. Defendants require Representatives to participate in mandatory training sessions.

57. Defendants assess numerous monetary amounts against the commissions earned by Representatives. Such charges include, but are not limited to: monthly charges for office rent, software use, and computer hardware service and support charges; charges for marketing materials Representatives are required to use in connection with their work for Defendants; charges for stationary; charges for use of the internet, telephone, fax machines, and copiers; charges for postage; and charges for the purchase of required computers and computer equipment.

58. These monetary amounts are withheld from Registered Representatives' commission statements.

**FIRST CLAIM FOR RELIEF**
**(Violation of New Jersey Wage Payment Law)**

59. Plaintiff realleges and incorporates by reference all previous paragraphs.

60.     Defendants are employers within the meaning of the New Jersey Wage Payment Law, N.J. Stat. § 34:11-4.1(a).

61.     Plaintiff and Class members are Defendants' employees within the meaning of N.J. Stat. § 34:11-4.1(b).

62.     Defendants paid to the Plaintiff and Class members compensation for their services that are wages within the meaning of N.J. Stat. § 34:11-4.1(c).

63.     On a monthly basis, Defendants withheld and diverted from the wages of Plaintiff and Class members various amounts, including but not limited to amounts for the rent of required offices; purchase of required computers; software charges; hardware service and support charges; charges for required marketing materials; stationary charges; internet, telephone, and fax charges; copier charges; and postage charges.

64.     Defendants withheld and diverted portions of the wages of Plaintiff and Class members as set forth above in violation of N.J. Stat. § 34:11-4.4.

65.     Defendants' conduct was intentional deliberate, willful, and conducted in callous disregard for the protected rights of Plaintiff and members of the Class.

66.     As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Class members are entitled to all equitable and legal remedies available the law including, but not limited to, recovery of the full amount of wrongfully withheld or diverted wages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, pray for relief as follows:

    (A)    Designation of this action as a class action pursuant to Federal Rule of Civil Procedure 23;

    (B)    Designation of Plaintiff as Representative of the Class;

    (C)    An award of damages, according to proof, to be paid by Defendants;

    (D)    Costs of action incurred herein, including expert fees;

    (E)    For reasonable attorneys' fees, interest, and costs of suit;

    (F)    For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York  
        August 15, 2016

Respectfully submitted,  
JOSEPH & KIRSCHENBAUM LLP

By:   /s/ Lucas C. Buzzard  
      D. Maimon Kirschenbaum  
      Lucas C. Buzzard  
      32 Broadway, Suite 601  
      New York, NY 10004  
      Tel: (212) 688-5640  
      Fax: (212) 688-2548

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.